O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAWN DEANNE E.,

          Plaintiff,

   v.

ANDREW M. SAUL, Commissioner
of Social Security,

          Defendant.

Case No. 2:20-CV-05731 KES

MEMORANDUM OPINION AND
ORDER

**I.**

**BACKGROUND**

      In June 2015, Dawn Deanne E. ("Plaintiff") applied for Title II and Title XVI disability benefits alleging an onset date of February 5, 2013, with a last date insured ("LDI") of June 30, 2016. Administrative Record ("AR") 262, 263, 365, 389. On January 4, 2019, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was not represented by counsel,[1] appeared and testified along with a vocational expert ("VE"). AR 187–241. On July 2, 2019, the ALJ issued an unfavorable decision. AR 34–44.

---

[1] The ALJ reminded Plaintiff of her right to representation, but she elected to proceed on her own. AR 190–92.

1    The ALJ found that Plaintiff suffered from the severe impairments of
2    "degenerative joint disease of the bilateral knees status post bilateral total knee
3    arthroplasties, obesity, chronic obstructive pulmonary disease (COPD), and
4    diverticulosis." AR 37. The ALJ determined that despite these impairments,
5    Plaintiff had the residual functional capacity ("RFC") to perform sedentary work
6    using a cane and with restrictions against certain postural activities and
7    environmental conditions. AR 39. Sedentary work requires "walking and
8    standing … occasionally," 20 C.F.R. §§ 404.1567(a), 416.967(a), which means that
9    "periods of standing or walking should generally total no more than about 2 hours
10   of an 8-hour workday," Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at
11   *5, 1983 SSR LEXIS 30, at *13; see also SSR 96-9p, 1996 WL 374185, at *6, 1996
12   SSR LEXIS 6, at *17 ("In order to perform a full range of sedentary work, an
13   individual must be able to remain in a seated position for approximately 6 hours of
14   an 8-hour workday, with a morning break, a lunch period, and an afternoon break at
15   approximately 2-hour intervals.").
16   Based on this RFC and the VE's testimony, the ALJ found that Plaintiff
17   could perform her past sedentary work as a customer service representative
18   (Dictionary of Occupational Titles ["DOT"] 299.357-014), as both actually and
19   generally performed. AR 43. The ALJ concluded that Plaintiff was not disabled.
20   AR 44.

## II.

## ISSUE PRESENTED

23   This appeal presents the sole issue of whether the ALJ erred by giving
24   "significant weight" to the opinions of consultative examiner Rajeswari Kumar,
25   M.D., but failing to include in the RFC all limitations posited by Dr. Kumar. (Dkt.
26   23, Joint Stipulation ["JS"] at 4.) Dr. Kumar opined that Plaintiff could sit for up to
27   6 hours per workday but only for 30 minutes at one time without interruption. AR

1    734.  Thus, he essentially opined that Plaintiff could do sedentary work with a 30-

2    minute sit/stand option.

3         Plaintiff contends that the ALJ erred by either failing to (1) incorporate a

4    sit/stand option consistent with Dr. Kumar's opinion into her RFC, or (2) give

5    legally sufficient reasons for rejecting Dr. Kumar's opinion.  (JS at 7–8.)

6    Defendant argues that any error is harmless, because there is no evidence that

7    Plaintiff could not perform the work of a customer service representative, as

8    generally performed, while changing position every 30 minutes.[2]  (Id. at 11.)

9                              **III.**

10                  **SUMMARY OF THE MEDICAL EVIDENCE**

11   **A.     <u>Treating Records.</u>**

12        The record contains progress notes from Plaintiff's primary care doctor,

13   Dewey Pillai, M.D., from 2015–2019.  AR 113–32, 554–94, 673–723.  Due to

14   complaints of knee pain, Dr. Pillai referred Plaintiff for pain management with the

15   Sierra Medical Group ("Sierra") in July 2015 and physical therapy ("PT") in May

16   2016, but Plaintiff was unable to tolerate more than the first session of PT.  AR

17   552, 563.  By May 2016, Dr. Pillai recommended that Plaintiff get more "activity"

18   while also recognizing that she walked "with care" and needed more stability.  AR

19   563.

20        In June 2017, Plaintiff achieved sobriety.  AR 232.  In July 2017, Dr. Pillai

21   referred Plaintiff for a surgical consultation with Justin Sherfey, M.D.  AR 482.  X-

22   rays confirmed "bone on bone" osteoarthritis affecting both of Plaintiff's knees.

23   AR 486.  Plaintiff was limping and using a walker.  AR 482.  After reviewing

24   Plaintiff's history and confirming that medication and PT had not significantly

25

26   ————————————————

27        [2] A sit/stand option would be inconsistent with how Plaintiff actually
     performed her prior customer service job.  She engaged in 8 hours of sitting per day
28   at a call center with no walking or standing.  AR 216–17, 408.

                                    3

improved her knee pain, Plaintiff underwent double knee replacement surgery in December 2017.  AR 486, 491, 505.

Immediately after surgery, Plaintiff was using a wheelchair and was referred back to PT and pain management with Sierra.  AR 505, 519 (PT records).  She initially reported decreased knee pain, then increased knee pain.  AR 505, 508.  By January 2018, her doctors assessed that she was "healing and progressing well at this time."  AR 510.  By March 2018, she reported "improved ambulation and minimal to no pain.  She notes that her quality of life has significantly improved and she is very happy with the outcome at this time."  AR 514.  Consistent with this, at the hearing, Plaintiff testified that after her knee replacement surgery, she was "doing really well there for quite a while" and walking without an assistive device.  AR 223–24.  In May 2018, she could stand or walk 3–4 hours, and in July 2018, she had a mostly normal physical examination.  AR 532–33, 540–41.

In January 2019, however, a "new problem" arose with her hip or back that caused her left leg "to be not able to hold [her] weight."  AR 223–24.  Hip x-rays in January 2019 showed impingement.  AR 130.  By August 2019, left hip x-rays showed "moderate/severe" degenerative joint disease.  AR 107.  In February, June, and August 2019, Plaintiff estimated that she could stand or walk for 30 minutes or less.  AR 82, 94, 98.

**B.**    **Medical Opinion Evidence.**

The AR contains the following six medical opinions of Plaintiff's RFC, in chronological order:

• October 22, 2015: After performing an internal medicine consultative examination, John Sedgh, M.D., opined that Plaintiff could stand or walk 2 hours per workday using a cane.  AR 458, 463.

• November 19, 2015: On initial evaluation, state agency consultant N. Tsoulos, M.D., found that Plaintiff could stand or walk a total of 2 hours with

normal breaks due to knee pain.  AR 248–49.  This opinion does not specify use of a cane.  AR 248.

    • October 14, 2016: Dr. Sedgh performed a second consultative examination and reiterated that Plaintiff could stand or walk for 2 hours per workday using a cane.  AR 473, 477.

    • January 5, 2017: On reconsideration, state agency consultant Julie L. Chu, M.D., found that Plaintiff could stand or walk a total of 2 hours with a note that Plaintiff "should use a cane for prolonged ambulation."  AR 274, 278.

    • June 4, 2018: Dr. Pillai completed a "Physical Health Assessment for General Relief" form.  AR 724–25.  Dr. Pillai opined that Plaintiff's medical condition prevented her from performing all fulltime, sedentary work, but he did not specify why.  AR 725.

    • April 3, 2019: Dr. Kumar performed a consultative orthopedic examination. AR 727–32.  Plaintiff reported that she experienced left hip and left knee pain, which was "aggravated with 30 minutes of sitting, 15 minutes of standing, walking 4 blocks, lifting 10 pounds, [and] climbing 1 flight of stairs."  AR 727–28.  Dr. Kumar observed that Plaintiff had a non-antalgic gait and could walk in the examining room without an assistive device.  AR 729.  Dr. Kumar noted that Plaintiff's hips were "normal" except for some limited external rotation of the left hip.  AR 730.  Her knees exhibited "diffuse tenderness" but no swelling.  AR 730. Dr. Kumar observed that "both knees show minimal restriction of range of motion." AR 731.  Plaintiff had normal lower body muscle strength.  AR 731.  Dr. Kumar concluded that Plaintiff could engage in standing and walking 2 hours per day and sitting 6 hours per day, without an assistive device but with "routine breaks."  AR 731.  Dr. Kumar also completed a standard Agency physical RFC form.  AR 733–39.  On this form, Dr. Kumar clarified that Plaintiff could sit or stand 30 minutes and walk 15 minutes "at one time without interruption."  AR 734.  To do this, she did not require use of a cane.  AR 734, 739.

5

1    The ALJ gave the opinions of the state agency consultants "partial weight,"

2  because they overstated Plaintiff's lifting abilities and did not have the benefit of

3  reviewing her later medical records.  AR 41–42.  The ALJ gave Dr. Sedgh's

4  opinions "partial weight" for the same reasons.  AR 42.  The ALJ gave Dr. Pillai's

5  statement "little weight" as unsupported and inconsistent with the medical

6  evidence.  AR 42.  Finally, the ALJ gave Dr. Kumar's opinions "significant

7  weight."  AR 42–43.

8                                             **IV.**

9                                      **DISCUSSION**

10  **A.**    **Plaintiff Has Burden At Step Four To Prove She Cannot Perform Past**

11            **Relevant Work.**

12    "At step four, a claimant has the burden to prove that he cannot perform his

13  past relevant work either as actually performed or as generally performed in the

14  national economy."  Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (citation

15  omitted).  "ALJs may use either the 'actually performed test' or the 'generally

16  performed test' when evaluating a claimant's ability to perform past work."  Id.

17  The "generally performed test" is described as follows:

18          A former job performed in by the claimant may have involved

19          functional demands and job duties significantly in excess of those

20          generally required for the job by other employers throughout the

21          national economy.  Under this test, if the claimant cannot perform the

22          excessive functional demands and/or job duties actually required in the

23          former job but can perform the functional demands and job duties as

24          generally required by employers throughout the economy, the claimant

25          should be found to be "not disabled."

26  SSR 82-61, 1982 WL 31387 at *2, 1982 SSR LEXIS 31, at *4.

27    In order to evaluate how a particular job is usually performed, the ALJ may

28  use the services of a VE.  SSR 82-61, 1982 WL 31387 at *2, 1982 SSR LEXIS 31,

at *4.  Further, in making disability determinations, the Agency relies "primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."  SSR 00-4p, 2000 WL 1898704, at *2, 2000 SSR LEXIS 8, at *4; see Zavalin v. Colvin, 778 F.3d 842, 845–46 (9th Cir. 2015) ("In making this determination, the ALJ relies on the DOT, which is the [Agency's] primary source of reliable job information regarding jobs that exist in the national economy.") (citation omitted); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (noting that the Agency "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT).

Federal courts routinely "apply harmless error analysis to social security cases."  Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015).  The nature of that application is fact-intensive—"no presumptions operate" and the federal court must analyze harmlessness "in light of the circumstances of the case."  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011) (citing Shinseki v. Sanders, 556 U.S. 396, 407–08 (2009)).  Thus, "ALJ errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination" and only if a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." Marsh, 792 F.3d at 1173 (citation omitted).

**B.** **Any Error by ALJ of Failing to Include a Sit/Stand Option Was Harmless.**

ALJs confronted with a medical opinion for a sit/stand option are instructed to consider the following:

An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the

facts in the case record, such as the frequency of the need to alternate

sitting and standing and the length of time needed to stand.  The RFC

assessment must be specific as to the frequency of the individual's

need to alternate sitting and standing.  It may be especially useful in

these situations to consult a vocational resource ….

SSR 96-9p, 1996 WL 374185, at *7, 1996 SSR LEXIS 6, at *18–19.

Here, the ALJ failed to include a sit/stand option in the RFC or provide an explanation for why it was medically unnecessary, despite Dr. Kumar's opinion.[3] Because the RFC did not include a sit/stand option, the ALJ did not ask the VE whether a hypothetical worker who must shift positions after 30 minutes of sitting could work as a customer service representative, as that job is generally performed.

The ALJ's error, however, was harmless, because it does not create uncertainty as to the ultimate finding that Plaintiff was not disabled.  The job duties of a customer service representative (telephone solicitor) are as follows:

Solicits orders for merchandise or services over telephone: Calls

prospective customers to explain type of service or merchandise

offered.  Quotes prices and tries to persuade customer to buy, using

prepared sales talk.  Records names, addresses, purchases, and

reactions of prospects solicited.  Refers orders to other workers for

---

[3] During Dr. Kumar's objective examination, Plaintiff stood and sat with normal posture and no evidence of any tilt or list, sat comfortably during the examination, rose from a chair without difficulty, exhibited a non-antalgic gait and minimal restriction of range of motion, and ambulated without any assistive devices.  AR 728–29, 731.  Thus, Dr. Kumar's sit/stand opinion may have been based on Plaintiff's subjective statements.  AR 727–28, 731.  The ALJ partially rejected Plaintiff's subjective symptom statements, AR 40–41, which Plaintiff does not contest.  Or the ALJ may have included the use of a cane—which Dr. Kumar did not find necessary—as a medical alternative to Dr. Kumar's sit/stand option.  But either way, the ALJ did not explain her reasoning, thus necessitating the Court to perform a harmless error analysis.

8

1     filling.  Keys data from order card into computer, using keyboard.

2     May develop lists of prospects from city and telephone directories.

3     May type report on sales activities.  May contact [drivers] to arrange

4     delivery of merchandise.

5 DOT 299.357-014.  alternatively

6        As Defendant points out, "there is nothing in the job description of a

7 customer service representative that indicates Plaintiff would be required to sit at

8 intervals greater than 30 minutes."  (JS at 11.)  To the contrary, one can generally

9 stand while speaking on the phone, even if using a headset.  If one needs to type

10 information while using the phone, there are inexpensive, adjustable desktop

11 platforms that convert traditional workstations into standing desks.  See Posadas v.

12 Colvin, No. ED CV 16-00034 AFM, 2016 U.S. Dist. LEXIS 176174, at *11–12,

13 2016 WL 7480252, at *4 (C.D. Cal. Dec. 20, 2016) (finding harmless error where

14 ALJ asked VE's basis for testifying that hypothetical worker who needed to spend

15 10% of time standing or stretching could work as a customer service

16 representative).  Indeed, the Ninth Circuit has noted that "allowing a sit/stand

17 option is commonplace in call center workplaces."  Loop v. Colvin, 651 F. App'x

18 694, 696 (9th Cir. 2016) ("the gist of the vocational expert's testimony was that

19 allowing a sit/stand option is commonplace in call center workplaces, and this is

20 how the call center job is generally performed in the national economy"); see also

21 Dewey v. Colvin, 650 F. App'x 512, 514 (9th Cir. 2016) (noting that where the

22 DOT is "silent on whether the jobs in question allow for a sit/stand option," there is

23 no conflict with a vocational expert's testimony that a claimant can perform a job

24 with a sit/stand option).

25        Consistent with this common-sense conclusion, multiple VEs in other cases

26 have opined that claimants can perform the functional demands and job duties of a

27 customer service representative as generally required by employers throughout the

28 national economy with a sit/stand option.  See, e.g., Belinda, W. v. Berryhill, No.

1  17-CV-01776, 2019 WL 281283, at *5, 2019 U.S. Dist. LEXIS 9788, at *14 (D.

2  Or. Jan. 22, 2019) ("Plaintiff could perform her past relevant work as a call center

3  customer service technician, even with the sit/stand option required in Plaintiff's

4  RFC"); De Rodriguez v. Berryhill, No. 15-cv-01199, 2017 WL 1054782, at *13,

5  2017 U.S. Dist. LEXIS 39696, at *15 (E.D. Cal. Mar. 19, 2017) (reporting VE

6  testimony that DOT 299.357-014 can be performed with a sit/stand option every

7  hour); Kjeldgaard v. Colvin, No. CV-12-00410, 2014 WL 1285907, at *2, 2014

8  U.S. Dist. LEXIS 42692, at *7 (E.D. Wash. Mar. 28, 2014) ("ALJ found that

9  Plaintiff is able to perform past relevant work as a telephone solicitor, customer

10 service clerk with sit/stand option"); Stokley v. Colvin, No. CV-12-0043, 2013 WL

11 1819688, at *6 (E.D. Wash. Apr. 29, 2013) ("VE opined there were jobs as a …

12 telephone solicitor that Plaintiff could perform at the sedentary level with the

13 sit/stand option"); Martinez v. Comm'r of Soc. Sec., No. CV-10-00306, 2010 WL

14 3516774, at *6, 2010 U.S. Dist. LEXIS 98442, at *16 (D. Ariz. Sept. 1, 2010) (VE

15 testified that telephone solicitor job "could accommodate a sit/stand option

16 limitation"); Rivera v. Colvin, No. 15-CV-6318, 2016 WL 2636311, at *9, 2016

17 U.S. Dist. LEXIS 60510, at *26–27 (W.D.N.Y. May 6, 2016) (VE testified that a

18 person with a RFC "for sedentary to light work 'with a sit/stand option' … could

19 work as a telephone marketer or solicitor"); Harris v. Colvin, No. 15-5052, 2016

20 WL 11410923, at *10, 2016 U.S. Dist. LEXIS 178059, at *35 (D.S.C. Dec. 7,

21 2016) (reporting VE testimony that DOT 299.357-014 can be performed with a

22 sit/stand option every 30 minutes); Garavaglia v. Colvin, No. 14-CV-2464, 2015

23 WL 8781342, at *1, 2015 U.S. Dist. LEXIS 167186, at *2 (M.D. Pa. Dec. 15, 2015)

24 (VE testified that sit/stand option is compatible with telephone solicitor positions);

25 Pumphrey v. Comm'r of Soc. Sec., No. 3:14-CV-71, 2015 WL 3868354, at *22,

26 2014 U.S. Dist. LEXIS 184194, at *32–33 (N.D.W. Va. June 23, 2015)

27 (telemarketer position can accommodate "a sit/stand option which would allow the

28 person to change positions briefly for one to two minutes at least every 30

10

minutes"); <u>Winterbottom v. Colvin</u>, No. 14-1146, 2015 WL 6019333, at *3, 2015 U.S. Dist. LEXIS 140476, at *8 (W.D. Okla. Sept. 14, 2015), <u>report and recommendation adopted,</u> No. 14-1146, 2015 WL 6019642, 2015 U.S. Dist. LEXIS 139658 (W.D. Okla. Oct. 14, 2015) (VE testified that "with Plaintiff's RFC and the specific sit/stand alternative identified, the hypothetical individual … could also perform the sedentary, semi-skilled jobs of telephone solicitor"); <u>Gray v. Colvin,</u> No. CIV.A. 2:13-11127, 2014 WL 4698485, at *4, 2014 U.S. Dist. LEXIS 132768, at *8 (S.D.W. Va. Sept. 19, 2014) ("VE testified that a sit/stand option would not preclude telemarketing jobs even though they are classified as sedentary by the DOT"); <u>Rogers v. Astrue</u>, No. 10-CV-352, 2011 WL 4346567, at *5, 2011 U.S. Dist. LEXIS 105219, at *15–16 (M.D. Fla. Sept. 16, 2011) (VE testified that a person with the RFC to perform sedentary work with a sit/stand option could perform the job of a telephone solicitor, DOT 299.357-014); <u>Faciano v. Astrue</u>, No. 10 C 1341, 2011 WL 2516525, at *9, 2011 U.S. Dist. LEXIS 67255, at *27 (N.D. Ill. June 21, 2011) (VE's "testimony provides substantial evidence for the ALJ's conclusion that the telemarketing position exists with a sit/stand option"); <u>Whitlock v. Comm'r of Soc. Sec.</u>, No. 10-CV-1006, 2011 WL 3584799, at *4, 2011 U.S. Dist. LEXIS 91226, at *11 (C.D. Ill. Aug. 16, 2011) ("ALJ asked whether the individual was limited to only sedentary work with a sit-stand option, to which the VE responded that work as a telephone solicitor would be the only option"); <u>Spencer v. Barnhart</u>, No. 04 CV 752, 2008 WL 479999, at *7, 2007 U.S. Dist. LEXIS 99859, at *17 (S.D. Miss. Feb. 19, 2008) (telephone solicitor position can accommodate a sit/stand option); <u>Pearson v. Astrue</u>, No. 05 CV 55, 2007 WL 9747648, at *5, 2007 U.S. Dist. LEXIS 105822, at *12–13 (M.D. Ala. July 17, 2007), <u>aff'd</u>, 271 F. App'x 979 (11th Cir. 2008) (VE identified telephone solicitor as a job which can accommodate a sedentary RFC with a sit/stand option); <u>Bridges v. Comm'r of Soc. Sec. Admin.</u>, 278 F. Supp. 2d 797, 802 (N.D. Tex. 2003) (VE

1  identified telephone solicitor as a job which can accommodate a sedentary RFC

2  with a sit/stand option).

3         Plaintiff does not cite any evidence that her past work, as generally

4  performed, could not be done with a sit/stand option.  Plaintiff herself testified, "I

5  sit, but only for a short time [about 30 minutes].  So I don't know if I had a job, if

6  I'd be able to get up and down like that without them having a problem with it …."

7  AR 233.  Thus, while Plaintiff was unsure whether supervisors would allow it, she

8  did not see getting up and down as an obstacle to performing the essential job

9  duties.  The Court confidently concludes that even if the RFC included a sit/stand

10 option, no reasonable ALJ would have found Plaintiff disabled.

**V.**

**CONCLUSION**

13        For the reasons stated above, IT IS ORDERED that judgment shall be

14 entered AFFIRMING the decision of the Commissioner.

16 DATED:  April 26, 2021

KAREN E. SCOTT
United States Magistrate Judge